**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
John P. O'Toole, Esq. (JPOT-1373)
33 Washington Street, 17th Floor
Newark, New Jersey 07102-5003
Tel: (973) 624-0800
Fax: (973) 624-0808
Attorneys for Plaintiffs, Fleet National Bank and FleetBoston Financial Corp.

RECEIVED-CLERK
U.S. DISTRICT COURT

2004 FEB 18 P 12: 51

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

-----------------------------------------------------------------------

FLEET NATIONAL BANK and FLEETBOSTON
FINANCIAL CORP.,

                        Plaintiffs,

    -against-

WEIGHTMAN GROUP, INC. d/b/a THE WEIGHTMAN
GROUP, JOHN C. GOODCHILD, JR., NAT
GUTWIRTH, STEPHANIE HOGARTH, EDWARD
O'KEEFE, ANN TURCO, WILLIAM LUNSFORD,
PAUL BURGER, JOANNE GUARDIANI, ED HUBER
and LIBBY SHERRY,

                        Defendants,

    -and-

"John Doe" number One through "John Doe" number
Ten, being fictitious names, the actual names and
addresses being unknown, but it being intended to
name thereby all of the persons or entities that came
into possession of any of the assets involved herein, as
well as any and all others who may claim under them,
their successors in interest, their spouses, creditors,
mortgagees, lienors, assigns and legal representatives,

                Additional Defendants.

-----------------------------------------------------------------------

Civil Action No.: 02-CV-9556 (KMW)
04 - 714 (DMC)

**COMPLAINT**

320992.1

Plaintiffs, FLEET NATIONAL BANK and FLEETBOSTON FINANCIAL CORP., as successor to Summit Bank,[1] by its attorneys, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, as and for its complaint against the defendants, alleges as follows:

## THE PARTIES

1.      Plaintiff Fleet National Bank is a National Banking Association organized and existing under the laws of the United States of America, and Plaintiff FleetBoston Financial Corp. (hereinafter, collectively with Fleet National Bank, "Fleet") is its parent corporation.  Fleet National Bank maintains its principal office/corporate headquarters at 111 Westminster Street, Providence, Rhode Island 02903, and further maintains and operates various duly authorized branches and offices for the transaction of business within the State of New Jersey.

2.      Upon information and belief, the Defendant WEIGHTMAN GROUP, INC. d/b/a THE WEIGHTMAN GROUP ("Weightman") was, and at all relevant times still is, a Delaware Corporation, maintaining an office for the transaction of business at 2129 Chestnut Street, Philadelphia, Pennsylvania 19103.

3.      Upon information and belief, the Defendant Weightman was, and at all relevant times still is, a Pennsylvania Corporation, maintaining an office for the transaction of business at 2129 Chestnut Street, Philadelphia, Pennsylvania 19103.

4.      Upon information and belief, the defendant Weightman was, and at all relevant times still is, an advertising agency.

## THE INDIVIDUAL DEFENDANTS

5.      Upon information and belief, the Defendant JOHN C. GOODCHILD, JR. ("Goodchild") was, and at all relevant times still is, a resident of the State of Pennsylvania.

---

[1]   FleetBoston Financial Corp. (Fleet National Bank's parent) acquired Summit BanCorp. (Summit Bank's parent) by merger, and Summit Bank was thereafter a part of Fleet National Bank.

6. Upon information and belief, the Defendant NAT GUTWIRTH ("Gutwirth") was, and at all relevant times still is, a resident of the State of Pennsylvania.

7. Upon information and belief, the Defendant STEPHANIE HOGARTH ("Hogarth") was, and at all relevant times still is, a resident of the State of Pennsylvania.

8. Upon information and belief, the Defendant EDWARD O'KEEFE ("O'Keefe") was, and at all relevant times still is, a resident of the State of Pennsylvania.

9. Upon information and belief, the Defendant ANN TURCO ("Turco") was, and at all relevant times still is, a resident of the State of Pennsylvania.

10. Upon information and belief, the Defendant WILLIAM LUNSFORD ("Lunsford") was, and at all relevant times still is, a resident of the State of Pennsylvania.

11. Upon information and belief, the Defendant PAUL BURGER ("Burger") was, and at all relevant times still is, a resident of the State of Pennsylvania.

12. Upon information and belief, the Defendant JOANNE GUARDIANI ("Guardiani") was, and at all relevant times still is, a resident of the State of Pennsylvania.

13. Upon information and belief, the Defendant ED HUBER ("Huber") was, and at all relevant times still is, a resident of the State of Pennsylvania.

14. Upon information and belief, the Defendant LIBBY SHERRY ("Sherry") (hereinafter, collectively with Goodchild, Gutwirth, Hogarth, O'Keefe, Turco, Lunsford, Burger, Guardiani and Huber, the "Officers")[2] was, and at all relevant times still is, a resident of the State of Pennsylvania.

15. The Defendants "John Doe" number One through "John Doe" number Ten, being fictitious names, the actual names and addresses being unknown, are joined herein by Fleet with

---

[2] Hereinafter, defendants Weightman and the Officers are collectively referred to as the "Defendants."

3

the intention of naming thereby all of the persons or entities that came into possession of any of the assets involved herein as further detailed, *infra*, as well as any and all others who may claim under them, their successors in interest, their spouses, creditors, mortgagees, lienors, assigns and legal representatives by, through or under any specifically named defendant, subject to further amendment of the summons and the within complaint according to law.

16.     Upon information and belief, the Defendant Goodchild was, and at all relevant times still is, chairman of the Board of Directors and Chief Executive Officer of Weightman.

17.     Upon information and belief, the Defendant Gutwirth was, and at all relevant times still is, a Senior Vice-President and the Creative Director of Weightman.

18.     Upon information and belief, the Defendant Hogarth was, and at all relevant times still is, a Senior Vice-President of Weightman.

19.     Upon information and belief, the Defendant O'Keefe was, and at all relevant times still is, a Senior Vice-President and the Media Director of Weightman.

20.     Upon information and belief, the Defendant Turco was, and at all relevant times still is, a Senior Vice-President and the Controller of Weightman.

21.     Upon information and belief, the Defendant Lunsford was, and at all relevant times still is, the President of Weightman.

22.     Upon information and belief, the Defendant Burger was, and at all relevant times still is, the Executive Vice-President and the Chief Operating Officer of Weightman.

23.     Upon information and belief, the Defendant Guardiani was, and at all relevant times still is, a Vice-President and the Broadcast Director of Weightman.

24.     Upon information and belief, the Defendant Huber was, and at all relevant times still is, a Vice-President and the Design Director of Weightman.

4

25.     Upon information and belief, the Defendant Sherry was, and at all relevant times still is, a Vice-President and the Senior Brand Planner of Weightman.

## JURISDICTION

26.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) because it is a controversy between citizens of different states, there is complete diversity between the parties, and the matter in controversy exceeds the sum of $75,000, excluding interest and costs..

27.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this judicial district.

## FACTS AND ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

28.     In or about 2000, Fleet's predecessor, Summit Bank ("Summit"), retained Weightman as its agent for the placement of various advertisements on Summit's behalf ("Advertisements") in various media including, without limitation, magazines, newspapers and radio stations ("Publishers").

29.     Under the terms of the contract entered between Weightman and Summit ("Contract"), Weightman undertook to place the Advertisements with the Publishers and to have the Publishers bill Weightman directly for the costs of publication and/or broadcasting of the Advertisements.

30.     Under the terms of the Contract, Weightman was to "pass-through" the Publishers' invoices to Summit along with Weightman's itemized covering invoice detailing the various services and billings by the Publishers ("Publisher Fees").

5

320992.1

31.     Under the terms of the Contract, Weightman was to issue separate invoices to Summit for Weightman's charges to Summit for all services performed by Weightman as Summit's agent ("Weightman Fees").

32.     Under the terms of the Contract, upon receiving an invoice from Weightman for Publisher Fees, Summit was to pay the Publisher Fees directly to Weightman, and Weightman was thereupon to pay the Publisher Fees in full, without set-off or deduction of any sort, to the Publishers.

33.     Under the terms of the Contract, Weightman had no interest in any of the funds representing Publisher Fees paid by Summit to Weightman, and was obligated to hold such Publisher Fees in trust to be applied only to payment of the invoiced Publisher Fees to the Publishers.

34.     Under the terms of the Contract, Weightman's only interest was in Summit's separate payments of the Weightman Fees under the separate and distinct invoices therefor tendered by Weightman.

35.     During years 2000 through 2001, Summit, and thereafter Fleet (hereinafter, collectively, "Fleet"), paid Publisher Fees to Weightman in the approximate sum of not less than $668,839.58 representing Publisher Fees for certain Advertisements placed by Weightman on Fleet's behalf.

36.     During years 2000 through 2001, Fleet also paid significant sums to Weightman as and for Weightman Fees representing Weightman's charges for its services as Fleet's agent, and which sums were paid in addition to all Publisher Fees.

37.     Weightman owed Fleet both: (i) a duty to perform under the Contract; and  (ii) a fiduciary duty, with respect to its trust obligations to hold the funds delivered to Weightman by Fleet for Publisher Fees and only to apply the funds in full payment of the Publisher Fees.

38.     The Officers owed Fleet both: (i) a duty to perform under the Contract; and  (ii) a fiduciary duty, with respect to its trust obligations to hold the funds delivered to Weightman by Fleet for Publisher Fees and only to apply the funds in full payment of the Publisher Fees, and the Officers face personal liability for their individual wrongful actions and tortious conduct.

39.     In or about April, 2002, Fleet became aware that certain Publisher Fees paid by Fleet to Weightman had not been paid to certain Publishers for the Advertisements placed by Weightman with the Publishers on Fleet's behalf.

40.     Fleet learned of Weightman's and the Officers' breach of trust, *inter alia*, based on Fleet's receipt of service of process from, as of the date hereof, four Publishers covering complaints alleging that they had not been paid the Publisher Fees for Advertisements placed by Weightman with the Publishers on Fleet's behalf ("Publisher Actions"), most recently by way of service on Fleet of a summons and complaint filed on October 21, 2002, in a case seeking Publisher Fees of $35,850.00, captioned Infinity Broadcasting Corp. d/b/a WFAN Sports Radio 66 v. FleetBoston Financial Corp., et al., Index Number 122962/02 pending in New York State Supreme Court, New York County.

41.     The Publisher Fees sought by the Publishers in the Publisher Actions represent Publisher Fees previously paid by Fleet to Weightman in the sum of $155,274.75 and which Weightman was unconditionally obligated to pay to the Publishers without set-off or deduction of any sort whatsoever.

7

42.     As of the date hereof, Fleet has been forced to pay the sum of $47,119 to resolve two of the pending Publisher Actions.

43.     Thereafter, based on communications with Weightman's outside corporate counsel, and documents received from Weightman and Weightman's said attorneys, Weightman has admitted that not less than the sum of $668,839.58 in Publisher Fees previously paid by Fleet to Weightman had not been paid over by Weightman to the respective Publishers ("Unpaid Publisher Fees").

44.     Upon information and belief, there are actions pending by Publishers against Weightman other than the above three Publisher Actions, for which Fleet faces possible liability for certain of the Unpaid Publisher Fees.

45.     Fleet faces liability to the Publishers respecting the Unpaid Publisher Fees, despite the fact that Fleet previously paid such Publisher Fees to Weightman to be paid over to the Publishers.

46.     Fleet has, and will continue to be, exposed to significant legal and other related expense as a result of the Defendants' actions and omissions respecting the Unpaid Publisher Fees.

47.     Upon information and belief, the Defendants conspired to use the trust funds paid by Fleet to Weightman in the minimum sum of the Unpaid Publisher fees for unknown purposes and applied same in breach of trust to use by Weightman.

48.     Upon information and belief, the Defendants conspired to use the trust funds paid by Fleet to Weightman in the minimum sum of the Unpaid Publisher fees for unknown purposes and applied same in breach of trust to use by the Officers.

8

49.     Upon information and belief, the Defendants in fact used the trust funds paid by Fleet to Weightman in the minimum sum of the Unpaid Publisher fees for unknown purposes and applied same in breach of trust to use by Weightman.

50.     Upon information and belief, the Defendants in fact used the trust funds paid by Fleet to Weightman in the minimum sum of the Unpaid Publisher Fees for unknown purposes and applied same in breach of trust to use by the Officers.

51.     Upon information and belief, Weightman has also issued false invoices to Fleet for payment of Publisher Fees for Advertisements that were never actually placed by Weightman with any Publishers ("False Publisher Fees").

52.     Upon information and belief, Weightman also obtained payment from Fleet for certain False Publisher Fees in an unknown amount in addition to the Unpaid Publisher Fees.

53.     Upon information and belief, each of the Officers was actually involved in undertaking Weightman's breach of the Contract and breach of trust respecting the funds held by Weightman to be applied only to the Unpaid Publisher Fees.

54.     Upon information and belief, each of the Officers was actually involved in undertaking Weightman's breach of the Contract and breach of trust respecting the funds improperly obtained by Weightman from Fleet under the invoices for the False Publisher Fees.

55.     Upon information and belief, each of the Officers had actual knowledge of Weightman's breach of the Contract and breach of trust respecting the funds held by Weightman to be applied only to the Unpaid Publisher Fees.

56.     Upon information and belief, each of the Officers had actual knowledge of Weightman's breach of the Contract and breach of trust respecting the funds improperly obtained by Weightman from Fleet under the invoices for the False Publisher Fees.

9

57.     Upon information and belief, each of the Officers had constructive knowledge of Weightman's breach of the Contract and breach of trust respecting the funds held by Weightman to be applied only to the Unpaid Publisher Fees.

58.     Upon information and belief, each of the Officers had constructive knowledge of Weightman's breach of the Contract and breach of trust respecting the funds improperly obtained by Weightman from Fleet under the invoices for the False Publisher Fees.

59.     The Officers are individually liable to Fleet, jointly and severally, in the total minimum sum of the Unpaid Publisher Fees and the funds respecting the False Publisher Fees paid by Fleet to Weightman.

60.     Weightman is liable to Fleet in the total minimum sum of the Unpaid Publisher Fees and the funds respecting the False Publisher Fees paid by Fleet to Weightman.

### AS AND FOR A FIRST CAUSE OF ACTION AGAINST WEIGHTMAN
### (Breach of Contract)

61.     Fleet repeats and realleges each of the allegations contained in paragraphs "1" through "60" of this complaint with the same force and effect as if fully set forth herein.

62.     The Contract obligated Weightman to pay all trust funds paid by Fleet to Weightman for Publisher Fees to the Publishers.

63.     Weightman failed to pay such trust funds in the minimum sum of the Unpaid Publisher Fees of $668,839.58 to the Publishers.

64.     Fleet has been forced to resolve certain claims of Publishers by payment of $47,119 to settle two of the Publisher Actions, which sums are upon information and belief in addition to the Unpaid Publisher Fees.

320992.1

65.     Weightman further improperly obtained False Publisher Fees in an uncertain sum from Fleet under false invoices.

66.     Fleet has incurred legal and other expanses in connection with the Publisher Actions, to date in the sum of $5,000.

67.     Weightman is obligated in addition to pay Fleet's reasonable attorneys' fees incurred in this action.

68.     Weightman's breach of contract was willful and egregious and involved harm to the public in addition to the damages to Fleet by virtue of Weightman's improper use of trust funds and the resulting multiple claims of numerous Publishers.

69.     As a result of the foregoing, Fleet has sustained damages against Weightman in the present minimum total sum of the Unpaid Publisher Fees of $668,839.58, plus Fleet's payment of $47,119 to settle two of the Publisher Actions and the sum of $5,000 respecting Fleet's legal expenses incurred therein, making in all the total liquidated sum of $720,958.58, plus interest, and plus an additional sum representing the unliquidated amount of the False Publisher Fees, any sums paid by Fleet to resolve any other Publisher Actions and Fleet's attorneys' fees incurred herein as to be determined by the Court.

70.     Additionally, due to the Nature of Weightman's breach of trust and breach of contract, Weightman is liable to Fleet in a sum not less than $5,000,000 as and for punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION
## AGAINST ALL OF THE DEFENDANTS
### (Conversion)

11

71.     Fleet repeats and realleges each of the allegations contained in paragraphs "1" through "60" and "62" through "70" of this complaint with the same force and effect as if fully set forth herein.

72.     The Defendants have, and never had, any claim to the trust funds held by Weightman in the minimum sums of the Unpaid Publisher Fees of $668,839.58.

73.     The Defendants have, and never had, any claim to the funds improperly obtained by Weightman from Fleet under the invoices for the False Publisher Fees of uncertain amount (hereinafter, collectively with the Unpaid Publisher Fees, the "Funds").

74.     Any retention or payment of the Funds by the Defendants otherwise than as required under the Contract constituted a wrongful exercise of ownership rights in, and dominion and control over, the Funds, to the wrongful exclusion of Fleet's and the Publishers' rights therein.

75.     As a result of the foregoing, Fleet has sustained damages against Weightman in the present minimum total sum of the Unpaid Publisher Fees of $668,839.58, plus Fleet's payment of $47,119 to settle two of the Publisher Actions and the sum of $5,000 respecting Fleet's legal expenses incurred therein, making in all the total liquidated sum of $720,958.58, plus interest, and plus an additional sum representing the unliquidated amount of the False Publisher Fees, any sums paid by Fleet to resolve any other Publisher Actions and Fleet's attorneys' fees incurred herein as to be determined by the Court.


### AS AND FOR A THIRD CAUSE OF ACTION
### AGAINST ALL OF THE DEFENDANTS
**(Fraud)**

12

76.     Fleet repeats and realleges each of the allegations contained in paragraphs "1" through "60," "62" through "70" and "72" through "75" of this complaint with the same force and effect as if fully set forth herein. Those allegations set forth with particularity the facts upon which Fleet's fraud claims are based as required by the CPLR.

77.     The Defendants' representations to Fleet regarding the use of the Funds in connection with the Contract were untrue.

78.     The Defendants' representations to Fleet regarding the use of the Funds in connection with the Contract were made with the intent to improperly obtain the Funds from Fleet and to use the Funds for improper purposes not permitted by the Contract or law.

79.     Fleet reasonably relied on the Defendants' representations concerning the Funds.

80.     As a result of the foregoing, Fleet has sustained damages against Weightman in the present minimum total sum of the Unpaid Publisher Fees of $668,839.58, plus Fleet's payment of $47,119 to settle two of the Publisher Actions and the sum of $5,000 respecting Fleet's legal expenses incurred therein, making in all the total liquidated sum of $720,958.58, plus interest, and plus an additional sum representing the unliquidated amount of the False Publisher Fees, any sums paid by Fleet to resolve any other Publisher Actions and Fleet's attorneys' fees incurred herein as to be determined by the Court.

81.     Additionally, due to the Nature of the Defendants' breach of trust and breach of contract, the Defendants are liable, jointly and severally, to Fleet in a sum not less than $5,000,000 as and for punitive damages.

### AS AND FOR A FOURTH CAUSE OF ACTION
### AGAINST ALL OF THE DEFENDANTS
#### (Constructive Fraud)

82.     Fleet repeats and realleges each of the allegations contained in paragraphs "1" through "60," "62" through "70," "72" through "75" and "77" through "81" of this complaint

13

with the same force and effect as if fully set forth herein. Those allegations set forth with particularity the facts upon which Fleet's constructive fraud claims are based as required by the CPLR.

83.     The Defendants' were obligated by virtue of their fiduciary relationship with fleet respecting the Funds to fully apprise Fleet of all of their actions and intentions with respect to the use of the Funds.

84.     The Defendants failed to disclose information within their knowledge respecting their intended use, and actual use in fact, of the Funds otherwise than as permitted by the Contract and law.

85.     As a result of the foregoing, Fleet has sustained damages against Weightman in the present minimum total sum of the Unpaid Publisher Fees of $668,839.58, plus Fleet's payment of $47,119 to settle two of the Publisher Actions and the sum of $5,000 respecting Fleet's legal expenses incurred therein, making in all the total liquidated sum of $720,958.58, plus interest, and plus an additional sum representing the unliquidated amount of the False Publisher Fees, any sums paid by Fleet to resolve any other Publisher Actions and Fleet's attorneys' fees incurred herein as to be determined by the Court.

86.     Additionally, due to the Nature of the Defendants' breach of trust and breach of contract, the Defendants are liable, jointly and severally, to Fleet in a sum not less than $5,000,000 as and for punitive damages.

14

## AS AND FOR A FIFTH CAUSE OF ACTION
## AGAINST THE DEFENDANT WEIGHTMAN
### (Breach Of Implied Covenant Of
### Good Faith And Fair Dealing)

87.     Fleet repeats and realleges each of the allegations contained in paragraphs "1" through "60," "62" through "70," "72" through "75," "77" through "81" and "83" through "86"of this complaint with the same force and effect as if fully set forth herein.

88.     In improperly acting with respect to the funds paid by Fleet to Weightman, the Defendants' conduct, statements, misrepresentations, actions and omissions constituted a breach of the Contract and a breach by Weightman of the accompanying covenants of good faith and fair dealing implied as a matter of law in the performance of any contract, all to Fleet's damage.

89.     As a result of the foregoing, Fleet has sustained damages against Weightman in the present minimum total sum of the Unpaid Publisher Fees of $668,839.58, plus Fleet's payment of $47,119 to settle two of the Publisher Actions and the sum of $5,000 respecting Fleet's legal expenses incurred therein, making in all the total liquidated sum of $720,958.58, plus interest, and plus an additional sum representing the unliquidated amount of the False Publisher Fees, any sums paid by Fleet to resolve any other Publisher Actions and Fleet's attorneys' fees incurred herein as to be determined by the Court.

## AS AND FOR A SIXTH CAUSE OF ACTION
## AGAINST ALL OF THE DEFENDANTS
### (Unjust Enrichment and Restitution)

90.     Fleet repeats and realleges each of the allegations contained in paragraphs "1" through "60," "62" through "70," "72" through "75," "77" through "81," "83" through "86" and "88" through "89" of this complaint with the same force and effect as if fully set forth herein.

91.     The Defendants have, and never had, any claim to the Funds.

320992.1

92.     Any retention or payment of the Funds by the Defendants otherwise than as required under the Contract constituted a wrongful exercise of ownership rights in, and dominion and control over, the Funds, to the wrongful exclusion of Fleet's and the Publishers' rights therein.

93.     The Defendants have been unjustly enriched in the amount of the Funds.

94.     As a result of the foregoing, Fleet has sustained damages against Weightman in the present minimum total sum of the Unpaid Publisher Fees of $668,839.58, plus Fleet's payment of $47,119 to settle two of the Publisher Actions and the sum of $5,000 respecting Fleet's legal expenses incurred therein, making in all the total liquidated sum of $720,958.58, plus interest, and plus an additional sum representing the unliquidated amount of the False Publisher Fees, any sums paid by Fleet to resolve any other Publisher Actions and Fleet's attorneys' fees incurred herein as to be determined by the Court.

### AS AND FOR A SEVENTH CAUSE OF ACTION
### AGAINST ALL OF THE DEFENDANTS
**(Money Had and Received)**

95.     Fleet repeats and realleges each of the allegations contained in paragraphs "1" through "60," "62" through "70," "72" through "75," "77" through "81," "83" through "86," "88" through "89" and "91" through "95" of this complaint with the same force and effect as if fully set forth herein.

96.     The Defendants have, and never had, any claim to the Funds.

97.     Any retention or payment of the Funds by the Defendants otherwise than as required under the Contract constituted a wrongful exercise of ownership rights in, and dominion and control over, the Funds, to the wrongful exclusion of Fleet's and the Publishers' rights therein.

16

98.   The Defendants wrongfully received and had possession and control of the Funds.

99.   The Defendants have been unjustly enriched in the amount of the Funds.

100.   As a result of the foregoing, Fleet has sustained damages against Weightman in the present minimum total sum of the Unpaid Publisher Fees of $668,839.58, plus Fleet's payment of $47,119 to settle two of the Publisher Actions and the sum of $5,000 respecting Fleet's legal expenses incurred therein, making in all the total liquidated sum of $720,958.58, plus interest, and plus an additional sum representing the unliquidated amount of the False Publisher Fees, any sums paid by Fleet to resolve any other Publisher Actions and Fleet's attorneys' fees incurred herein as to be determined by the Court.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
### AGAINST ALL OF THE DEFENDANTS
### (*Prima Facie* Tort)

101.   Fleet repeats and realleges each of the allegations contained in paragraphs "1" through "60," "62" through "70," "72" through "75," "77" through "81," "83" through "86," "88" through "89," "91" through "95" and "97" through "100" of this complaint with the same force and effect as if fully set forth herein.

102.   The Defendants have, and never had, any claim to the Funds.

103.   Any retention or payment of the Funds by the Defendants otherwise than as required under the Contract constituted a wrongful exercise of ownership rights in, and dominion and control over, the Funds, to the wrongful exclusion of Fleet's and the Publishers' rights therein.

104.   The Defendants wrongfully received and had possession and control of the Funds.

105.   The Defendants have been unjustly enriched in the amount of the Funds.

106.   The Defendants' continued possession and use of the Funds otherwise than as permitted under the Contract and law was undertaken with the wrongful and tortious intent to deprive the rightful owner of the Funds of possession of same, and without justification in law.

107.   As a result of the foregoing, Fleet has sustained damages against Weightman in the present minimum total sum of the Unpaid Publisher Fees of $668,839.58, plus Fleet's payment of $47,119 to settle two of the Publisher Actions and the sum of $5,000 respecting Fleet's legal expenses incurred therein, making in all the total liquidated sum of $720,958.58, plus interest, and plus an additional sum representing the unliquidated amount of the False Publisher Fees, any sums paid by Fleet to resolve any other Publisher Actions and Fleet's attorneys' fees incurred herein as to be determined by the Court.

## AS AND FOR A NINTH CAUSE OF ACTION
## AGAINST ALL OF THE DEFENDANTS
### (Accounting)

108.   Fleet repeats and realleges each of the allegations contained in paragraphs "1" through "60," "62" through "70," "72" through "75," "77" through "81," "83" through "86," "88" through "89," "91" through "95," "97" through "100" and "102" through "107" of this complaint with the same force and effect as if fully set forth herein.

109. Upon information and belief, an accounting by the defendant Weightman will reveal the amount of the False Publisher Fees, which sums cannot now be determined by plaintiff Fleet.

110. Upon information and belief, an accounting by the defendant Weightman will reveal the amount of any other unliquidated Funds improperly obtained and/or used by Weightman, which sums cannot now be determined by plaintiff Fleet.

320992.1

111. Upon information and belief, an accounting by the Officers will reveal the amount of any Funds improperly obtained and/or used by them, individually, or for purposes other than the business operations of Weightman, which sums cannot now be determined by plaintiff Fleet.

112. By virtue of the forgoing, plaintiff Fleet is entitled to a full accounting of all Funds, and including the Defendants' disposition of all of the same.

**AS AND FOR A TENTH CAUSE OF ACTION**
**AGAINST ALL OF THE DEFENDANTS**
**(Breach of Fiduciary Duty / Constructive Trust)**

113. Fleet repeats and realleges each of the allegations contained in paragraphs "1" through "60," "62" through "70," "72" through "75," "77" through "81," "83" through "86," "88" through "89," "91" through "95," "97" through "100," "102" through "107" and "109" through "112" of this complaint with the same force and effect as if fully set forth herein.

114. As set forth herein, the Defendants owed a fiduciary duty to Fleet regarding the Funds.

115. The Defendants breached their fiduciary duty to Fleet by, *inter alia*, willfully, intentionally and maliciously misapplying Funds; converting the Funds; failing to fully account for all of the Funds; engaging in conduct for their own benefit to the exclusion of Fleet's and the Publishers' rights; failing to act loyally; and/or misrepresenting and concealing material facts in connection with the Funds.

116. Fleet has been damaged by the Defendants' breach of fiduciary duty.

117. As a result of the foregoing, Fleet has sustained damages against Weightman in the present minimum total sum of the Unpaid Publisher Fees of $668,839.58, plus Fleet's payment of $47,119 to settle two of the Publisher Actions and the sum of $5,000 respecting

19

Fleet's legal expenses incurred therein, making in all the total liquidated sum of $720,958.58, plus interest, and plus an additional sum representing the unliquidated amount of the False Publisher Fees, any sums paid by Fleet to resolve any other Publisher Actions and Fleet's attorneys' fees incurred herein as to be determined by the Court.

118. Additionally, due to the Nature of the Defendants' breach of trust and breach of contract, the Defendants are liable, jointly and severally, to Fleet in a sum not less than $5,000,000 as and for punitive damages.

119. By virtue of the foregoing, Fleet is also entitled to the imposition of a constructive trust covering the amount of all Funds due to Fleet.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION
## AGAINST THE INDIVIDUAL DEFENDANT OFFICERS
### (Alter Ego / Corporate Veil Piercing)

120. Fleet repeats and realleges each of the allegations contained in paragraphs "1" through "60," "62" through "70," "72" through "75," "77" through "81," "83" through "86," "88" through "89," "91" through "95," "97" through "100," "102" through "107," "109" through "112" and "114" through "119" of this complaint with the same force and effect as if fully set forth herein.

121. Upon information and belief, the Defendants failed to adhere to the requisite formality for corporate actions by Weightman with respect to the Funds and the use of the Funds.

122. Upon information and belief, the Defendants have failed to maintain the requisite independent identity of property, management, affairs, offices, funds, accounts, and business among and between the Weightman and the Officers regarding the Funds.

20

123. Upon information and belief, the Defendants have commingled the Funds with other Funds of the Defendants.

124. Upon information and belief, the Officers put funds into and take funds out of the accounts of Weightman for the benefit of the Officers.

125. The Officers have caused the corporation Weightman to engage in unsound business practices with respect to the Funds for the benefit of the Defendants and to the detriment of the Weightman and Fleet.

126. The Officers do not treat the corporation Weightman as an independent profit center, but rather as a vehicle to benefit the Officers.

127. Upon information and belief, the corporation is so controlled, used and managed by the Officers that it is, in effect, the alter ego of the Officers.

128. As a result of the foregoing, Fleet has sustained damages against Weightman in the present minimum total sum of the Unpaid Publisher Fees of $668,839.58, plus Fleet's payment of $47,119 to settle two of the Publisher Actions and the sum of $5,000 respecting Fleet's legal expenses incurred therein, making in all the total liquidated sum of $720,958.58, plus interest, and plus an additional sum representing the unliquidated amount of the False Publisher Fees, any sums paid by Fleet to resolve any other Publisher Actions and Fleet's attorneys' fees incurred herein as to be determined by the Court.

**WHEREFORE**, Fleet demands judgment, as follows:

(a)    On Fleet's first cause of action against Weightman, judgment in the present minimum total sum of the Unpaid Publisher Fees of $668,839.58, plus Fleet's payment of $47,119 to settle two of the Publisher Actions and the sum of $5,000 respecting Fleet's legal expenses incurred therein, making in all the total liquidated sum of $720,958.58, plus interest,

21

and plus an additional sum representing the unliquidated amount of the False Publisher Fees, any sums paid by Fleet to resolve any other Publisher Actions and Fleet's attorneys' fees incurred herein as to be determined by the Court;

(b)     On Fleet's second cause of action against the Defendants, judgment, jointly and severally, in the present minimum total sum of the Unpaid Publisher Fees of $668,839.58, plus Fleet's payment of $47,119 to settle two of the Publisher Actions and the sum of $5,000 respecting Fleet's legal expenses incurred therein, making in all the total liquidated sum of $720,958.58, plus interest, and plus an additional sum representing the unliquidated amount of the False Publisher Fees, any sums paid by Fleet to resolve any other Publisher Actions and Fleet's attorneys' fees incurred herein as to be determined by the Court;

(c)     On Fleet's third cause of action against the Defendants, judgment, jointly and severally, in the present minimum total sum of the Unpaid Publisher Fees of $668,839.58, plus Fleet's payment of $47,119 to settle two of the Publisher Actions and the sum of $5,000 respecting Fleet's legal expenses incurred therein, making in all the total liquidated sum of $720,958.58, plus interest, and plus an additional sum representing the unliquidated amount of the False Publisher Fees, any sums paid by Fleet to resolve any other Publisher Actions and Fleet's attorneys' fees incurred herein as to be determined by the Court, and together with punitive damages in a sum not less than $5,000.000;

(d)     On Fleet's fourth cause of action against the Defendants, judgment, jointly and severally, in the present minimum total sum of the Unpaid Publisher Fees of $668,839.58, plus Fleet's payment of $47,119 to settle two of the Publisher Actions and the sum of $5,000 respecting Fleet's legal expenses incurred therein, making in all the total liquidated sum of $720,958.58, plus interest, and plus an additional sum representing the unliquidated amount of

22

the False Publisher Fees, any sums paid by Fleet to resolve any other Publisher Actions and Fleet's attorneys' fees incurred herein as to be determined by the Court, and together with punitive damages in a sum not less than $5,000.000;

(e)     On Fleet's fifth cause of action against the Defendants, judgment, jointly and severally, in the present minimum total sum of the Unpaid Publisher Fees of $668,839.58, plus Fleet's payment of $47,119 to settle two of the Publisher Actions and the sum of $5,000 respecting Fleet's legal expenses incurred therein, making in all the total liquidated sum of $720,958.58, plus interest, and plus an additional sum representing the unliquidated amount of the False Publisher Fees, any sums paid by Fleet to resolve any other Publisher Actions and Fleet's attorneys' fees incurred herein as to be determined by the Court;

(f)     On Fleet's sixth cause of action against the Defendants, judgment, jointly and severally, in the present minimum total sum of the Unpaid Publisher Fees of $668,839.58, plus Fleet's payment of $47,119 to settle two of the Publisher Actions and the sum of $5,000 respecting Fleet's legal expenses incurred therein, making in all the total liquidated sum of $720,958.58, plus interest, and plus an additional sum representing the unliquidated amount of the False Publisher Fees, any sums paid by Fleet to resolve any other Publisher Actions and Fleet's attorneys' fees incurred herein as to be determined by the Court;

(g)     On Fleet's seventh cause of action against the Defendants, judgment, jointly and severally, in the present minimum total sum of the Unpaid Publisher Fees of $668,839.58, plus Fleet's payment of $47,119 to settle two of the Publisher Actions and the sum of $5,000 respecting Fleet's legal expenses incurred therein, making in all the total liquidated sum of $720,958.58, plus interest, and plus an additional sum representing the unliquidated amount of

the False Publisher Fees, any sums paid by Fleet to resolve any other Publisher Actions and Fleet's attorneys' fees incurred herein as to be determined by the Court;

(h) On Fleet's eighth cause of action against the Defendants, judgment, jointly and severally, in the present minimum total sum of the Unpaid Publisher Fees of $668,839.58, plus Fleet's payment of $47,119 to settle two of the Publisher Actions and the sum of $5,000 respecting Fleet's legal expenses incurred therein, making in all the total liquidated sum of $720,958.58, plus interest, and plus an additional sum representing the unliquidated amount of the False Publisher Fees, any sums paid by Fleet to resolve any other Publisher Actions and Fleet's attorneys' fees incurred herein as to be determined by the Court;

(i) On Fleet's ninth cause of action against the Defendants, judgment for an interlocutory and final accounting in equity respecting all of the Funds;

(j) On Fleet's tenth cause of action against the Defendants, judgment, jointly and severally, in the present minimum total sum of the Unpaid Publisher Fees of $668,839.58, plus Fleet's payment of $47,119 to settle two of the Publisher Actions and the sum of $5,000 respecting Fleet's legal expenses incurred therein, making in all the total liquidated sum of $720,958.58, plus interest, and plus an additional sum representing the unliquidated amount of the False Publisher Fees, any sums paid by Fleet to resolve any other Publisher Actions and Fleet's attorneys' fees incurred herein as to be determined by the Court, and together with punitive damages in a sum not less than $5,000.000;

(k) On Fleet's eleventh cause of action against the Officers, judgment, jointly and severally, in the present minimum total sum of the Unpaid Publisher Fees of $668,839.58, plus Fleet's payment of $47,119 to settle two of the Publisher Actions and the sum of $5,000 respecting Fleet's legal expenses incurred therein, making in all the total liquidated sum of

24

$720,958.58, plus interest, and plus an additional sum representing the unliquidated amount of the False Publisher Fees, any sums paid by Fleet to resolve any other Publisher Actions and Fleet's attorneys' fees incurred herein as to be determined by the Court

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Attorneys for Plaintiffs, Fleet National Bank and FleetBoston Financial Corp.

By: _____
John P. O'Toole

Dated: February 15, 2004

25